IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHRISTOPHER J. ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24-CV-731 |
| | ) | |
| C.J. JOHNSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court for review under 28 U.S.C. § 1915(e)(2). The Magistrate Judge has recommended dismissal for failure to state a claim, and the plaintiff, Christopher Alexander, has objected in part. After *de novo* review, the Court concludes that Mr. Alexander's claim for an unreasonable seizure up to the time of his arrest is not facially implausible on the facts alleged, and that his Fourth Amendment claim based on that seizure may proceed. The Court otherwise agrees with the Magistrate Judge and all other claims are dismissed for failure to state a claim.

I. **Procedural History**

In August 2024, Mr. Alexander filed a paper writing asserting claims against numerous Greensboro police officers, Greensboro's City Manager, and possibly the City of Greensboro. Doc. 3. While not entirely clear, he appeared to contend that they violated his federal constitutional rights in connection with an investigation into the discovery of an unresponsive person in his motel room that ultimately culminated in his arrest on state charges. *Id.* He also sought to proceed without paying the filing fee, Doc. 1, and to be appointed counsel. Doc. 2.

Upon review under 28 U.S.C. § 1915(e)(2), the Court, per the Magistrate Judge, identified numerous problems with the complaint. Doc. 5. But in lieu of dismissal, the Court gave Mr. Alexander time to file an amended complaint that addressed specified defects in the original complaint, such as necessary factual matter about "Plaintiff's connection to the unresponsive person, the person's identity, location, [and] injuries, [and] the nature of Plaintiff's conversations with the police [officers] concerning that person." *Id.* at 1. Absent such information, as the Court explained, the claims in the original complaint "lack[ed] the necessary context to be evaluated or answered by Defendants" and constituted legally deficient "conclusory claims." *Id.* In addition, the Court noted that the complaint included a claim for excessive force but did not "allege any actual use of force." *Id.* Finally, the Court observed that the "complaint [sought] to hold . . . the City Manager . . . liable in his official capacity" but did "not contain allegations of any [municipal] policy or custom." *Id.* at 1–2.

Mr. Alexander received extensions of time, *see* Text Orders 09/25/2024, 11/06/2024, and eventually filed an amended complaint. Doc. 10. But that amended complaint added no further substance to the insufficient allegations in the original complaint. *See* Doc. 11 at 2. The Court, again per the Magistrate Judge, ordered the amended complaint stricken but again gave Mr. Alexander time to remedy the problems, explicitly directing Mr. Alexander's attention to its earlier order detailing those problems, Doc. 5, and instructing him to "submit only a filing which responds to that Order." Doc. 11 at 2. The Court warned Mr. Alexander that "[i]f he does not [do so], the case may be dismissed," telling him that regardless of his ongoing state criminal matter, he "must set

2

Case 1:24-cv-00731-CCE-LPA    Document 20    Filed 05/29/25    Page 2 of 15

out sufficient facts to explain his claims for relief to the Court and to the Defendants and to support those claims" in order to proceed with this civil action. *Id.*

After obtaining another extension of time, *see* Text Order 12/29/2024, Mr. Alexander filed a second amended complaint, Doc. 14, and a declaration. Doc. 15. The Magistrate Judge found that those filings did not correct the defects detailed in the earlier orders and recommended that the Court dismiss this action for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). Text Recommendation 02/23/2025.

Mr. Alexander concedes that dismissal of his claims against the city is appropriate, Doc. 18 at 1, but he objects to dismissal of the police officer defendants. *Id.* at 2–6. He expresses confusion over what is expected of him and contends that he has alleged sufficient facts to proceed. *Id.* He has also moved to stay the case pending resolution of the state criminal charges against him arising from this incident. Doc. 19.

II.     **Legal Standard**

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because his poverty makes it impossible for him to pay or secure the costs." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (cleaned up). "Dispensing with filing fees, however, [is] not without its problems. . . . In particular, litigants suing in forma pauperis [do] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." *Nagy v. FMC Butner*, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the *in forma pauperis* statute provides in relevant part that "the [C]ourt shall dismiss the case at any

3

time if the [C]ourt determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2).

A plaintiff fails to state a claim when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) ("The standards for reviewing a dismissal under § 1915(e)(2)(B)(ii) are the same as those for reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6)."). Legal conclusions "must be supported by factual allegations" that amount to more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678. A plaintiff is not required to "prove his case in the complaint," *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012), but the complaint's allegations should allow "a reasonable inference that the defendant is liable for the misconduct alleged." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up), but the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions." *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (cleaned up). "[C]ourts routinely look beyond what pro se litigants identify as their 'complaint' and analyze the substance of any included

4

documents in considering" dismissal of the complaint. *Pendleton v. Jividen*, 96 F.4th 652, 656 (4th Cir. 2024).

When a party objects to a magistrate judge's recommendation, a district judge reviews the recommendation *de novo* as to the portions to which the party objects. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Recommendations from a magistrate judge "are merely proposals and hold no presumptive weight." *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023).

### III. The Operative Complaint

In the second amended complaint, Mr. Alexander lists 13 defendants. Doc. 14 at 12. Liberally construing this complaint, he asserts claims for "illegal seizure" by defendant Sutphin and perhaps others in the time leading up to his arrest, *id.* at 16–17; conspiracy to unlawfully arrest by all officer defendants, *id.* at 18; unlawful arrest by defendants Johnson and Sutphin, *id.*; excessive force by defendant Sutphin, *id.* at 19; unlawful detention, *id.* at 20; "bystander liability" as to six named defendants and three Doe defendants, *id.*; and liability of the city for the officers' constitutional violations. *Id.*

Mr. Alexander provides additional factual detail in the "Declaration In Support of Complaint," Doc. 15, filed at the same time as the second amended complaint. The Court will consider the two filings together to be the operative complaint.[1] As required, the Court treats all allegations as true at this stage. *See, e.g., Thomas*, 841 F.3d at 637.

---

[1] The Magistrate Judge said that the second amended complaint "repeat[ed] nearly verbatim the same legally deficient allegations" as in previous versions, Text Recommendation 02/23/2025, but the Declaration added quite a bit of detail to the complaint.

5

## IV. Factual Allegations

Around 7 p.m. on August 28, 2021, Mr. Alexander called 911 to report that his girlfriend was unresponsive in his motel room. Doc. 15 at ¶¶ 1–2. EMS and law enforcement arrived, *id.* at ¶¶ 2–3, 6, and while in the parking lot near the ambulance, Mr. Alexander answered defendant Leeman's questions. *Id.* at ¶¶ 6–9. He then allowed defendants Leeman and Sutphin to look around his room. *Id.* at ¶ 11. The police officers left the motel. *Id.* at ¶ 12.

Shortly after the officers left, defendants Smith and Johnson ordered them to return and hold Mr. Alexander until defendant Detective Johnson arrived. *Id.* at ¶ 13. Around 8:15 p.m., defendant Sutphin came back to Mr. Alexander's motel room with other officers and said that Mr. Alexander "need[ed] to speak with the detective." *Id.* at ¶¶ 14–15. When he refused and began shutting the door, Sutphin put her foot in the doorway and her hand on her weapon, and she demanded that he speak with the detective. *Id.* at ¶ 15. She had no arrest warrant. *Id.* Mr. Alexander came out of the room, and the officers directed him to the parking lot. *Id.* at ¶¶ 16–17.

For the next several hours, despite Mr. Alexander's many protests, questions, demands that he be allowed to leave, and unfulfilled requests that he be allowed to use the restroom or make a phone call, Sutphin and other officers kept him from walking away. *Id.* at ¶¶ 17–31. At various points, Detective Johnson "interrogat[ed]" Mr. Alexander and directed the other officers to continue holding him. *Id.* at ¶¶ 19–20, 23, 27. Mr. Alexander became "frustrated and agitated" at the delay and lack of information,

*id.* at ¶ 26, but nothing in his detailed recitation of events indicates he resisted an officer or committed an obvious crime while in their presence.

At various points, officers told Mr. Alexander that they were waiting on a search warrant, even though he gave them permission to search his room. *Id.* at ¶¶ 22, 27. At 11:36 p.m., Detective Johnson obtained a search warrant for Mr. Alexander's room. *Id.* at ¶ 34. Sometime after midnight, defendant Sutphin spoke to defendants Johnson and Smith and then formally arrested Mr. Alexander without explanation. *Id.* at ¶¶ 32–33. Sutphin took Mr. Alexander to jail while other officers executed the search warrant. *Id.* at ¶¶ 33–34. Several hours later, Detective Johnson arrived at the jail, told him that he was charged with "assault," and took him before the magistrate. *Id.* at ¶¶ 38–39. The magistrate set a bond as a condition of pretrial release. Doc. 14 at 20. As of February 10, 2025, he was still detained in the Guilford County jail. *Id.*

V. **Analysis of Claims**

A. **Illegal Seizure**

Mr. Alexander brings a claim for "illegal seizure" against defendants Sutphin, Johnson, and Smith.[2] *Id.* at 16–17. The Court construes this to be a § 1983 claim for a

---

[2] Mr. Alexander says he "was seized illegally by Defendant Sutphin," Doc. 14 at 16, but he also appears to include more defendants in this claim, saying that that "[t]he Defendants had neither reasonable suspicion nor probable cause to seize [him]." *Id.* at 17. Mr. Alexander identifies several officers as present during the period of his alleged illegal seizure, but the only defendants whose involvement he alleges in a more than conclusory fashion are Sutphin, Smith, and Johnson. *See* Doc. 15 at ¶¶ 13, 17–31. The Court will liberally construe this claim to have been made against defendants Sutphin, Smith, and Johnson. To the extent Mr. Alexander intended to assert this claim against other officers, such claims are dismissed for failure to state a claim.

7

violation of Mr. Alexander's Fourth Amendment right to be free from unreasonable seizures.

The Fourth Amendment says that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "Its central requirement is one of reasonableness." *Illinois v. McArthur*, 531 U.S. 326, 330 (2001) (cleaned up). At this stage, Mr. Alexander must allege facts sufficient to make his claim plausible, that is, that he was seized and that the seizure was constitutionally unreasonable. *See Manuel v. City of Joliet*, 580 U.S. 357, 364 (2017).

"A person is seized whenever officials restrain his freedom of movement such that he is not free to leave." *Id.* (cleaned up) (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)). Mr. Alexander clearly alleges that he was seized once he was removed from his motel room and restrained for some hours in the parking lot. *See United States v. Watson*, 703 F.3d 684, 689 (4th Cir. 2013) (finding a seizure where officers "kept [a person] confined to a limited area during [a] three-hour detention").

As a general matter, seizures based on warrants or probable cause are typically reasonable, and seizures without a warrant or probable cause are typically unreasonable. *See, e.g.*, *McArthur*, 531 U.S. at 330; *Manuel*, 580 U.S. at 364. Mr. Alexander alleges that during the time he was held in the parking lot, the defendant officers did not have a warrant and that he had not committed any acts giving rise to probable cause. Doc. 15 at ¶¶ 15, 33. While there are some suspicious circumstances, it is not obvious from his

8

Case 1:24-cv-00731-CCE-LPA    Document 20    Filed 05/29/25    Page 8 of 15

recitation of the facts that he committed a crime. At this point, the Court must accept his allegations as true.

There are certain narrow situations where probable cause is not required. As is relevant here, a limited intrusion on Fourth Amendment rights is not unreasonable if it is "justified by special law enforcement interests." *Michigan v. Summers*, 452 U.S. 692, 700 (1981). Depending on the facts, this can include a restraint while officers seek a search warrant. *McArthur*, 531 U.S. at 331–33. Mr. Alexander alleges that Detective Johnson was seeking a search warrant while Mr. Alexander was restrained. Doc. 15 at ¶¶ 22, 27.

"In analyzing the reasonableness of a seizure that is not supported by probable cause, courts are required to evaluate the law enforcement interest and the nature of the articulable facts supporting the detention," *Watson*, 703 F.3d at 689–90 (cleaned up) (quoting *Summers*, 452 U.S. at 702), balancing privacy rights and law enforcement concerns. *McArthur*, 531 U.S. at 331. In *McArthur*, the Supreme Court found a seizure reasonable where officers kept a person from entering his home for two hours while waiting for a search warrant after learning from the person's wife that he had drugs in the home. *Id.* at 331–33. But in *Watson*, the Fourth Circuit held that a "three-hour detention in a confined space and under constant police surveillance" of a person "who lack[ed] any specific connection to suspected criminal activity" while awaiting a search warrant was unreasonable. 703 F.3d at 693–94.

In these cases, the courts had the benefit of a fully developed factual record. Here, the Court is limited to the allegations of the complaint, and there are many unanswered

9

questions.  Subject to reconsideration if and when the defendants file a motion to dismiss, the Court concludes that Mr. Alexander's claim, which is at least facially similar to the some of the facts in *Watson*, is not implausible at this stage.  Mr. Alexander's cause of action for unreasonable seizure from the time the officers removed him from his motel room until he was arrested can proceed.

**B. Unlawful Arrest and Conspiracy to Unlawfully Arrest**

Mr. Alexander alleges that he was arrested without probable cause, a Fourth Amendment violation.  Doc. 14 at 18.  He brings a claim for conspiracy to unlawfully arrest against all officer defendants and a claim for unlawful arrest against defendants Johnson and Sutphin.  *Id.*

"An officer can make a public warrantless arrest as long as the officer has probable cause to believe that a felony has been committed."  *United States v. McCraw*, 920 F.2d 224, 227 (4th Cir. 1990) (citing *United States v. Watson*, 423 U.S. 411 (1976)).  "Probable cause exists if, given the totality of the circumstances, the officer had reasonably trustworthy information sufficient to warrant a prudent person in believing that the petitioner had committed or was committing an offense."  *United States v. Sowards*, 690 F.3d 583, 588 (4th Cir. 2012) (cleaned up).

Mr. Alexander says that he was charged with "assault," Doc. 15 at ¶ 39, that he went before the magistrate and was "sent directly to booking," *id.* at ¶ 38, that a bond was set, Doc. 14 at 20, and that he remains in custody.  *Id.*  From this, it is clear that the magistrate found probable cause for his charge(s), and that the state case remains pending.  *See* Doc. 19 at 1–2.  Mr. Alexander is remarkably vague about many obviously

10

relevant facts, and there are no specific allegations tending to indicate that the magistrate's findings of probable cause were unfounded or that the officers' arrest of Mr. Alexander was not based on probable cause. North Carolina law requires a first appearance before a state district court judge, N.C. Gen. Stat. § 15A-601(a), and Mr. Alexander does not allege that this did not happen, nor does he allege any facts directed to whether he asked for or waived a probable cause hearing. *See id.* at § 15A-606(a). In the absence of more factual detail, he has failed to state a claim.

Mr. Alexander complains that it took three to four hours for him to be brought before the magistrate. Doc. 15 at ¶ 36. But that does not constitute a Fourth Amendment violation. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 352 (2001) ("[A]nyone arrested for a crime without formal process . . . is entitled to a magistrate's review of probable cause within 48 hours.").

Mr. Alexander has not stated a claim for unlawful arrest as to defendants Johnson and Sutphin, and this claim will be dismissed. Likewise, he has not stated a claim for conspiracy to unlawfully arrest[3] as to any defendants, and that claim will be dismissed.

C. Excessive Force

Mr. Alexander brings a Fourth Amendment excessive force claim against defendant Sutphin. Doc. 14 at 19. He alleges that Sutphin "assaulted [him] by a show of violence" when she "intrusively stuck her foot inside [his] doorway" and "put her hand

---

[3] To state this claim, Mr. Alexander "must allege that defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in his deprivation of a constitutional right." *Williams v. Mitchell*, 122 F.4th 85, 91 (4th Cir. 2024) (cleaned up) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)).

11

on her weapon threatening to use it." *Id.*; Doc. 15 at ¶ 15. And he alleges "mental and emotional injuries" from "her threat of force." Doc. 14 at 22.

To determine whether officers used excessive force, courts use an objective reasonableness standard, "balancing . . . the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018) (quoting *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015)). In this fact-specific inquiry, courts can consider three factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Courts also consider "the extent of the plaintiff's injuries." *Nazario v. Gutierrez*, 103 F.4th 213, 234 (4th Cir. 2024).

Even assuming that the Fourth Circuit permits claims for excessive force without physical injury[4] and without physical contact,[5] Mr. Alexander has not stated a claim for excessive force by defendant Sutphin. It is not objectively unreasonable for an officer to

---

[4] *See Dolgos*, 884 F.3d at 193–94 (Shedd, J., concurring) (collecting circuit court cases where handcuffing without injury was not excessive force); *Williams v. Canady*, No. 10-CV-558, 2014 WL 51245, at *8 (E.D.N.C. Jan. 7, 2014) (collecting cases where there was no injury and no excessive force), *aff'd*, 577 F. App'x 146 (4th Cir. 2014); *Smith v. Murphy*, 634 F. App'x 914, 917 (4th Cir. 2015) (holding that suffering only de minimis injuries does not bar one from asserting a Fourth Amendment excessive force claim).

[5] *See Schultz v. Braga*, 455 F.3d 470, 483 (4th Cir. 2006) ("Nor have we held today that a suspect must be physically struck by a bullet (or any other object) to state a claim for excessive force."); *see generally Wilson v. Lamp*, 142 F. Supp. 3d 793, 805 (N.D. Iowa 2015) (collecting circuit court cases applying excessive force requirements where no physical contact was made, e.g. gun-pointing and brandishing by officers). *But see Harrison v. Kennedy*, No. 16-CV-2442, 2024 WL 2977656, at *4 (E.D.N.Y. June 12, 2024) ("It is axiomatic that, where no actual physical force was used, no excessive force was used.").

12

put her foot in a doorway or to put her hand on her weapon in order to remove a person from the premises while a search warrant for those premises is sought. He does not allege that defendant Sutphin touched him at all, nor does he provide any specifics about the "mental and emotional injuries" he allegedly incurred. *See* Doc. 14 at 22. His excessive force claim is conclusory and insufficient to state a claim.

### D. Unlawful Detention

Mr. Alexander brings a claim for unlawful detention. Doc. 14 at 20. He alleges that his "unlawful arrest is the sole cause of [his] unlawful detention." *Id.* But he acknowledges that he has been charged with "assault" and that he was taken before a magistrate after his arrest. Doc 15 at ¶¶ 38–39. He also acknowledges that a bond has been set. Doc. 14 at 20. As noted *supra*, he is vague on the charges against him. This does not state a separate claim from his unlawful arrest claim and will be dismissed.

### E. Bystander Liability

Mr. Alexander brings a claim for "bystander liability" as to six named defendants and three Doe defendants. *Id.*[6] He alleges that these officers "failed to intervene" in his "unlawful[] arrest[]." *Id.* But as discussed *supra*, Mr. Alexander has not stated a claim for unlawful arrest, so this claim will likewise be dismissed.

---

[6] "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002) (adopting this standard and applying it to unlawful detention claims); *accord Quinn v. Zerkle*, 111 F.4th 281, 295 (4th Cir. 2024).

13

### F. City Liability for Constitutional Violations

Mr. Alexander agrees with the Magistrate Judge's recommendation that the city be dismissed from this lawsuit. Doc. 18 at 1. The defendants City Manager Taiwo Jaiyeoba and the City of Greensboro will be dismissed, as will this claim.

### VI. Motion to Stay

Mr. Alexander asks that the case be stayed pending resolution of his state charges. Doc. 19. This motion is premature. At this stage, the defendants do not even know that this lawsuit has been filed. The next steps are for the plaintiff to obtain service of process and for the defendants to respond to the complaint. There is little risk Mr. Alexander will be prejudiced by this or be required to invoke his constitutional rights against self-incrimination during this part of the process. There is no reason for a stay until, at the earliest, the defendants have been served and responded to the complaint. Whether a stay is appropriate is better evaluated under the facts as they exist after any motions to dismiss are resolved and an answer is filed. In the Court's discretion, the motion to stay will be denied.

It is **ORDERED** that:

1. The plaintiff's Fourth Amendment claim against defendants Sutphin, Johnson, and Smith for unreasonable seizure beginning when he was removed from his motel room until his arrest may proceed.

2. All other claims are **DISMISSED** for failure to state a claim. The remaining defendants are **DISMISSED** from this action.

3. The motion for a stay, Doc. 19, is **DENIED**.

4. The plaintiff is responsible for obtaining valid service of process on each remaining defendant within 90 days. *See* Fed. R. Civ. P. 4(m).

5. The case is referred to the Magistrate Judge to issue such orders as may be needed to facilitate service of process.

This the 29th day of May, 2025.

_____
UNITED STATES DISTRICT JUDGE