IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHRISTOPHER J. ALEXANDER,

Plaintiff,

v.

C.J. JOHNSON *et al.*,

Defendants.

1:24CV731

## MEMORANDUM OPINION, RECOMMENDATION, AND ORDER OF UNITED STATES MAGISTRATE JUDGE

This case arises from law enforcement's response to a call for service at a motel room in Greensboro in August 2021. The plaintiff, Christopher J. Alexander, made that call. His girlfriend was in the room, non-responsive. Treating medical staff determined that she had acute bleeding in her brain, a rib fracture, a fractured nose, and bruises all over. She later died from these injuries, and the State charged Alexander with her murder. He now brings this Section 1983 action against the responding officers in their individual capacities, alleging they violated his Fourth Amendment right to be free from unreasonable seizures, when they allegedly detained him while securing a search warrant for the motel room.

There are four pending motions before the Court:

1) The defendants' motion to dismiss the third amended complaint for failure to state a claim, Docket Entry 40;

2) Alexander's motion for reconsideration of the district court's judgment filed at Docket Entry 38, Docket Entry 43;

3) The defendants' motion to strike Alexander's proposed fifth amended complaint, Docket Entry 58; and

4) Alexander's motion for an extension of time to file a response/reply to the motion to strike, Docket Entry 60.

Alexander's claims fail and should be dismissed. Assuming *arguendo* there was a seizure at all, officers effected it within the bounds of the law. And even if not, qualified immunity bars this suit. Likewise, his motion for reconsideration of the district court's earlier order fails. The Court should deny it.

For the same reasons set forth in the district court's order denying

Alexander's motion for leave to amend his complaint a fourth time, the Court grants the defendants' motion to strike Alexander's unauthorized proposed fifth amended complaint. Finally, because Alexander does not provide good cause in support of his motion for an extension of time to reply to the defendants' two motions, the Court denies it.

## I. FACTS

All well-pled facts are accepted as true and considered in the light most favorable to the plaintiff. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009) (citation modified). Here, the defendants' motion to dismiss addresses Alexander's third amended complaint.[1]

On August 28, 2021, Alexander called Emergency Medical Services (EMS) personnel to the Relax Inn in Greensboro, North Carolina to tend to his girlfriend, Melissa Vassell, whom he reported was unresponsive. *See* Plaintiff's Third Amended Complaint, Docket Entry 26 (hereinafter "Compl."), at 16.

Once there, EMS personnel requested that law enforcement officers also assist. *Id.* Greensboro Police Department officers responded. *Id.* When they did, Officer Leeman spoke with Alexander where he was standing in the parking lot. *Id.* He asked Alexander the victim's name and age and what had happened. *Id.* at 17. Alexander told Officer Leeman that Vassell had fallen and indicated it was fine if the officer looked around the room. *Id.*

Around that time, Officer Sutphin (named as a defendant) arrived. *Id.* After the EMS personnel transported Vassell to the hospital, Officers Leeman and Sutphin followed Alexander to the motel room and looked around. *Id.*

Alexander alleges that after they left, "one or both of them contacted their supervisor or supervisors, defendants, Sgt. Smith, and/or Sgt. Pilcher, and/or Det. Johnson, and/or Det. Cpl. Garrison (collectively, 'supervisors'); two or more above conspired and acted jointly in concert and directed their subordinate co-conspirators, defendant(s) Sutphin … to return to my motel room." *Id.* at 18.

Officers Leeman and Sutphin returned to Alexander's room and knocked on the door. *Id.* at 19. Alexander opened the door partially; Officer Sutphin told him that he needed to speak with a detective. *Id.* Alexander replied that he did not have to talk to a detective, nor did he want to do so. *Id.*

Alexander tried to shut the door, and Officer Sutphin stepped into the

---

[1] This case has an extensive procedural history which is set forth in Section II *infra*.

room. *Id.* at 20. She placed her hand on her service weapon and told Alexander to speak with the detective. *Id.* This, Alexander alleges, is why he then left his room, where officers detained him. *Id.* at 21.

The police report related to the incident, which Alexander references in the third amended complaint and appended to his objections to the magistrate judge's recommendation of dismissal of all charges against the defendants save those currently remaining, provides more detail.[2]

Officer Leeman noted in his report that Alexander said Vassell had fallen (on Wednesday) and had been unresponsive since then. *See* Docket Entry 34-3 at 4. The paramedic told Officer Leeman that Vassell was in clean clothing and wearing tied shoes, which would be unusual for someone who had been in the bed, unresponsive for three days. *Id.* at 4-5. The paramedics also informed Officer Leeman that Vassell had bruising on or near her chest, cheek, jaw, eye, abdomen, shin, and knees, as well as a cut across her neck and symptoms of a head injury. *Id.* at 4. Officer Leeman was concerned because he believed many of the bruises were inconsistent with her falling. *See id.*

Officers Leeman and Sutphin went to Moses Cone Hospital, where medical staff were treating Vassell. *Id.* at 5. There, they learned that Vassell had acute bleeding in her brain, a rib fracture, a fractured nose, and bruises all over her body. *Id.* She was intubated and never woke again. *Id.*

Detective Johnson from GPD's homicide squad (named as a defendant) went to the motel to investigate; he spoke with Alexander three times and then left to secure a search warrant for the motel room where medics first encountered Vassell. *See id.* at 17-20.

Detective Johnson's affidavit in support of probable cause provides further details.[3] In it, he alleges that

---

[2] "[A] court may consider [a document outside the complaint] in determining whether to dismiss the complaint" if it "was integral to and explicitly relied on in the complaint" and there was no challenge to its authenticity. *See Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Courts have interpreted "explicit" referral in the complaint to be specific to the document, as is the case here, versus a document that could generally fall into the same category as an allegation. *See, e.g.*, *In re Cree, Inc. Sec. Litig.*, 333 F. Supp. 2d 461, 470 (M.D.N.C. 2004) ("Though Plaintiffs have not 'explicitly relied' on the articles in their complaint, Defendants essentially ask the court to look behind the complaint to find such reliance. This is not proper on a motion to dismiss.")

[3] Alexander also explicitly relied on this document in his third amended complaint, *see* Docket Entry 26, at 21, and the defendants have appended it to their motion, *see* Docket Entry 41-1. Accordingly, the Court will consider it. *See Davis v. Bacigalupi*, 711 F. Supp. 2d 609, 617 (E.D. Va. 2010) ("[W]hen a plaintiff fails to introduce a pertinent document as part of h[er] complaint, the

Alexander told the responding patrol officers that Vassell fell sometime three days earlier, he helped her into bed, and she had not been conscious since then. Docket Entry 41-1, at 6. He further states that he spoke with Alexander at the motel, who told him that he found Vassell on the floor after the fall and did not see any bruising or injuries on her, but noted that her hair was messed up. *Id.*

Alexander further told Detective Johnson that, on Thursday, he went to work and returned to the room to find her still in the bed; she had soiled herself, so he assisted with changing her clothing. *Id.* At that time, Alexander saw the bruising. *See id.* Alexander further explained to Detective Johnson that he assisted in changing Vassell on Friday, and that she had not spoken since Wednesday. *See id.* Shortly after the magistrate issued the warrant, Officer Sutphin arrested Alexander on charges arising from Vassell's injuries.

There is no information, in either the third amended complaint or the exhibits that the parties appended in their briefing, that Alexander was restrained in any way during the conversations with Detective Johnson; at various times, he was seated on the stairs or standing in the parking lot by Detective Johnson's

_____

defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment. Such documents include documents central to plaintiff's

patrol car. *See* Docket Entry 34-3, at 9.

## II.  PROCEDURAL HISTORY

Alexander filed the instant action against a number of law enforcement defendants, along with a request to proceed *in forma pauperis*, on August 26, 2024. *See* Docket Entry 1. The magistrate judge granted the status for purposes of recommending dismissal with leave to file an amended complaint. *See* Docket Entry 5. Alexander then filed a defective amended complaint; the magistrate judge struck it with instructions to amend again. *See* Docket Entry 11. Alexander filed a second amended complaint and a declaration in support thereof. *See* Docket Entries 14-15.

The magistrate judge, via text order issued on February 23, 2025, recommended dismissal of the claims against a number of defendants based on failure to state a claim, noting Alexander's insistence on "press[ing] the same defective claims in the same manner" despite "the passage of five months and after the entry of two different orders identifying the legal insufficiency of Plaintiff's claims in this action." *See* Docket Entry dated 02/23/2025. The district court then

_____

claim, as well as documents sufficiently referred to in the complaint, but only so long as the authenticity of these documents is not disputed.") (internal quotations and citations omitted).

Case 1:24-cv-00731-CCE-JGM    Document 61    Filed 07/27/26    Page 4 of 14

dismissed all claims save the Fourth Amendment claims against Sutphin, Johnson, and Smith. *See* Docket Entry 20. Alexander filed a third amended complaint – the operative one here – on September 24, 2025, again renewing claims that the district court had already deemed insufficient. *See* Docket Entry 26. The magistrate judge recommended dismissal of those claims via text order, *see* Docket Entry dated 10/03/2025, and Alexander filed a request for leave to file a fourth amended complaint, *see* Docket Entry 35, along with a motion for reconsideration of the recommendation, *see* Docket Entry 37.

The district court then adopted the magistrate judge's recommendation and denied Alexander's motion for reconsideration and request for leave to file a fourth amended complaint. *See* Docket Entry 38. The remaining defendants moved to dismiss. *See* Docket Entry 40. During the briefing of the motion, Alexander filed yet another amended complaint – the fifth one thus far – realleging defective claims already addressed multiples times by this Court. *See* Docket Entry 56. The defendants moved to strike it. *See* Docket Entry 58.

### III. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a plaintiff is not required to prove his case in the complaint, *see, e.g.*, *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012); *Scott v. City of Durham*, No. 1:20-CV-558, 2021 WL 3856168, at *2 (M.D.N.C. Aug. 27, 2021), the complaint's allegations should "allow 'the court to draw a reasonable inference that the defendant is liable for the misconduct alleged,'" *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678).

On a motion to dismiss, courts view the allegations in the complaint as true, drawing all inferences in the plaintiff's favor. *See Twombly*, 550 at 555–56 (2007); *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). But the court does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd.*, 591 F.3d at 255.   A *pro se* plaintiff's complaint must be construed liberally in his favor. *See Nichols v. Bumgarner*, 173 F.4th 511, 517–18, 520 (4th Cir. 2026); *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015).

"As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect." *Young v. City of Mount*

*Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (internal quotation marks omitted), *abrogated in nonrelevant part by Kingsley v. Hendrickson*, 576 U.S. 389 (2015).

However, even under this liberal pleading standard, Alexander has not alleged a viable violation of his Fourth Amendment rights against any of the defendants, and the Court should dismiss the third amended complaint. Because he continues to flout Court rulings and reallege the same defective claims, the Court should do so with prejudice.

## IV.    ANALYSIS

Title 42, United States Code, Section 1983 "is a federal statutory remedy available to those deprived of rights secured to them by the Constitution and, in a more sharply limited way, the statutory laws of the United States" by persons acting under color of state law. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). A Section 1983 claimant must show that a person acting under color of state law violated a Constitutional or other federal legal right. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Alexander fails to plead a Fourth Amendment violation.

The Fourth Amendment guarantees the right of individuals to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. "But not every police-citizen encounter will implicate this prohibition. For example, it is well-settled that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. Such consensual encounters demand no inquiry into the reasonableness of the officer's justification for engaging the individual, because the Fourth Amendment is not at all implicated." *United States v. Cloud*, 994 F.3d 233, 241 (4th Cir. 2021) (internal quotations and citations omitted).

Brief investigatory stops constitute seizures. *See United States v. Curry*, 965 F.3d 313, 319 (4th Cir. 2020) (en banc). Officers effect a seizure when they deploy "'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person." *Torres v. Madrid*, 592 U.S. 306, 345 (2021) (alteration in original) (quoting *Terry v. Ohio*, 392 U.S. 1 (1968)).

However, the person must actually acquiesce to the force first. *See United States v. Stover*, 808 F.3d 991, 995 (4th Cir. 2015) (citing *California v Hodari D.*, 499 U.S. 621, 628 (1991)). That can be explicit submission or passive acceptance; regardless, without it, "there is at most an attempted seizure, which is not subject to the Fourth Amendment protection." *See Stover*, 808 F.3d at 995 (internal quotation and citation omitted).

In analyzing whether a reasonable person would have felt free to leave a scene as here, the Fourth Circuit has

6

considered the following non-exclusive categories:

> (1) how many officers were present; (2) whether officers were in uniform and/or displayed firearms; (3) whether any officer touched the defendant or made any attempt to block or restrain his movement; (4) if the officer's questioning was "conversational rather than intimidating"; (5) whether the officer informed the defendant that he suspected him of illegal activity, or treated the encounter as "routine"; and (6) if the officer asked for identification, how quickly the officer returned it to the defendant.

*Cloud*, 994 F.3d at 242–43 (quoting and citing *United States v. Gray*, 883 F.2d 320, 322-23 (4th Cir. 1989)).

"In cases involving a seizure, the standard of 'reasonableness' typically is satisfied by a showing that the police had probable cause to conclude that the individual seized was involved in criminal activity." *United States v. Watson*, 703 F.3d 684, 689 (4th Cir. 2013) (citing *Dunaway v. New York*, 442 U.S. 200, 213–14 (1979)). "[A]n official seizure of the person must be supported by probable cause, even if no formal arrest is made." *Michigan v. Summers*, 452 U.S. 692, 696 (1981)

(citing *Dunaway*, 442 U.S. at 212–13).

Where probable cause does not support a seizure, courts must examine "the law enforcement interest and the nature of the 'articulable facts' supporting the detention." *See id.* at 702. "This analysis entails a balancing test because, under the Fourth Amendment, reasonableness depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Watson*, 703 F.3d at 690 (internal quotations and citations omitted). *See also Cloud*, 994 F.3d at 242 ("If a person acquiesces to an officer's show of authority, thereby giving rise to a seizure, then we must consider whether the officer had a reasonable articulable suspicion of criminal activity to justify the seizure.") (citing *United States v. Kehoe*, 893 F.3d 232, 237 (4th Cir. 2018)).

Reviewing courts measure reasonable suspicion "by the totality of the circumstances." *United States v. Peters*, 60 F.4th 855, 864 (4th Cir. 2023) (quoting and citing *United States v. Powell*, 666 F.3d 180, 186 (4th Cir. 2011)). "Evidence that would support only a mere hunch is insufficient, though a reasonable basis need not establish probable cause and may well fall[ ] considerably short of satisfying a preponderance of the evidence standard." *United States v. Massenburg*, 654 F.3d 480, 485 (4th Cir. 2011) (internal quotation and

Case 1:24-cv-00731-CCE-JGM    Document 61    Filed 07/27/26    Page 7 of 14

citation omitted). There must be a "particularized and objective" basis for it. *See id.* Thus, it is of an "officer-centered" nature. *See United States v. Perkins*, 363 F.3d 317, 323 (4th Cir. 2004). *See also United States v. Digiovanni*, 650 F.3d 498, 511 (4th Cir. 2011) ("The reasonable suspicion standard is an objective one, so we examine the facts within the knowledge of [the officer] to determine the presence or nonexistence of reasonable suspicion.").

Regarding civil rights conspiracy, "[t]o establish a civil conspiracy under § 1983, [the plaintiff] must present evidence that the [defendant]s acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in Appellants' deprivation of a constitutional right[.]" *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996), citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992). Because a "meeting of the minds represents a critical element of a conspiracy, [t]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Marshall v. Marshall*, 523 F. Supp. 3d 802, 829 (E.D. Va. 2021) (internal quotation and citation omitted) (alteration in original). While there need not be direct evidence, there must at least be "specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective. As such, conclusory allegations of a conspiracy

will not suffice." *See id.* (internal quotations and citations omitted).

Here, Alexander contends that Officer Sutphin, her supervisor, Sergeant Smith, and Detective Johnson conspired to and did unlawfully detain him after EMS personnel left his motel room, in violation of his Fourth Amendment rights. He is wrong. Assuming there was a seizure, the facts as pled indicate that only Officer Sutphin affected it, and she acted on an articulable suspicion that he was involved in criminal activity. And assuming that was not the case, qualified immunity protects her from liability regardless.

As alleged, after officers had already come to the room where EMS personnel were assisting Vassell, they returned. Compl. at 26. Alexander alleges that the "defendants" banged on his door, but the third amended complaint lists fourteen defendants (in violation of the district court's order narrowing the list to Smith, Sutphin, and Johnson), including four John Does. *See id.* at 13. It is unclear which of these individuals actually came to Alexander's door, as he only identifies Officer Sutphin by name.

Alexander alleges that Officer Sutphin advised him that he needed to speak with a detective. *Id.* at 19. Alexander alleges that he refused, and the "Defendants continued to exchange (go back and forth) and badger and/or coerce me, after I had already expressed to them multiple times (my expectation of privacy) that 'I don't

8

have to talk to or speak with a detective.'" *See id.* Again, the third amended complaint does not identify how many officers were present or involved in the "back and forth."

After this, Alexander alleges he attempted to close the motel room door and Officer Sutphin "intrusively stepp[ed] into my room (warrantless entry) preventing me from closing my door (again invading my zone of privacy), and 'assaulted me by a show of violence' when she put her hand on her weapon threatening to use it, and raised her voice and demanded that I speak with the detective." *See id.* at 20.

Alexander avers that this "scared me, which compelled me to change my mind and submit to their (Defendants] [sic] authority and compelled me to step out of the safety of my room. (I felt like if I didn't come out of my room I'd get shot or jumped by the officers). Then, I was surrounded and forced to stand by for an unreasonable delay to be interrogated against my will." *See id.*

The only identifiable details that could support a finding of seizure are: 1) the vague reference to multiple officers; 2) the reference to Officer Sutphin placing her hand on her weapon while directing Alexander to speak with the detective; and 3) Alexander being "surrounded and forced to stand by," again with no details regarding the number of law enforcement personnel involved or

what they did or did not do to force him to remain in place.

Granted, the pleading standard is a liberal one, even more so when a litigant proceeds *pro se*. But Alexander had, at the time he filed the third amended complaint, submitted four separate pleadings purporting to describe the deprivation of his rights arising from this incident. *See* Order and Judgment of Chief/Senior Judge Eagles, Docket Entry 38 ("Mr. Alexander has now had three bites at the apple. He is not entitled to a fourth, especially when it does not cure long-identified defects. His motion for leave to file a fourth amended complaint will be denied.").

Despite this, Alexander still fails to include critical details supporting his claims, providing only boilerplate legal phrasing such as:

- "[W]hen defendants Leeman and Sutphin concluded their cursory investigation they did not find any evidence of a crime; nor reasonable suspicion, nor probable cause", *id.* at 17;
- "It was explicit that the 'defendants' had acted Jointly [sic] in concert", *id.* at 18;
- "I had already expressed to them multiple times (my expectation of privacy) that 'I don't have to talk to or speak with a detective[,]"*id.* at 19;
- "Officer Sutphin intrusively stepp[ed] into my room (warrantless entry) preventing me from closing my door (again

9

invading my <u>zone of privacy</u>),” *id.* at 20;

- Officer Sutphin “‘assaulted me by <u>a show of violence</u>’ when she put her hand on her weapon threatening to use it”, *id.*;
- the defendants compelled him to “<u>submit to their (Defendants) [sic] authority</u> and compelled me to step out of the safety of my room. (I felt like if I didn’t come out of my room I’d get shot or jumped by the officers)”, *see id.* at 20-21.

(emphasis added).

Legal conclusions “must be supported by factual allegations” that amount to more than “unadorned, the-defendant-unlawfully-harmed-me accusation[s].” *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The complaint’s allegations should “allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.” *Int’l Refugee Assistance Project*, 961 F.3d at 648 (cleaned up).

Here, there is no way to ascertain how Sergeant Smith or Detective Johnson are possibly liable for any purported seizure based on the facts alleged beyond Alexander’s conclusory

asserttion that Officers Leeman and Sutphin “contacted their supervisor or supervisors, defendants, Sgt. Smith, and/or Sgt. Pilcher, and/or Det. Johnson, and/or Det. Cpl. Garrison (collectively, ‘supervisors’); two or more above conspired and acted jointly in concert and directed their subordinate co-conspirators, defendant(s) Sutphin … to return to my motel room.” This is insufficient to allege a civil rights conspiracy claim against either Johnson or Smith.

As to Officer Sutphin, even assuming *arguendo* that by placing her hand on her weapon and verbally directing Alexander’s movements, she effected a seizure, the facts as pled indicate that reasonable suspicion justified Alexander’s brief detention[4] and removal from the room.

Specifically: Alexander called EMS personnel to his motel room because his girlfriend, Vassell, was unresponsive in the room. *See* Compl. at 16. Alexander told Officer Leeman that Vassell had fallen. *See id.* at 17. He told Officers Leeman and Sutphin that Vassell had fallen two days earlier, he had placed her on the bed, and he went about his business leaving in the morning and not returning until dark for those two

---

[4] Alexander does not allege, nor do the supporting exhibits the Court has considered indicate, that Alexander was anything other than free to move about while speaking with Detective Johnson until his arrest by Officer Sutphin aside from his conclusory legal allegation that he was “interrogated against [his] will.”

Compl. at 20. There is no allegation that any of the named defendants directed him to remain in the area, blocked his egress, or made any showing of force that would cause a reasonable person to believe he was not free to leave.

days. *See* Docket Entry 34-3 at 3. Officers Leeman and Sutphin went to Moses Cone Hospital, where medical personnel were treating Vassell. *See id.* There, Officer Sutphin learned Vassell was unresponsive and would be intubated. *See id.* She further saw that Vassell had a large bruise on the right side of her jaw and bruising around her left eye. *See id.*

Thus, Officer Sutphin knew, at the time of the alleged seizure, that Alexander was with Vassell in the room at various times in the past two days, that she had been unresponsive during that time but he had not called for medical assistance until that evening, and that while he claimed she fell, she had serious injuries rendering her unresponsive, requiring intubation, and manifesting as bruising on her person, all consistent with an assault. And Alexander was the only person Officer Sutphin knew had encountered Vassell during the past two days.

She had, at the bare minimum, more than enough reasonable suspicion to conclude that Vassell had been assaulted and that Alexander was the culprit. Perhaps there were other explanations for her injuries at that point in time, but that does not obviate reasonable suspicion. *See United States v. Arvizu*, 534 U.S. 266, 277 (2002) ("A determination that reasonable suspicion exists ... need not rule out the possibility of innocent conduct."). Any seizure complied with

the strictures of the Fourth Amendment.

B. Qualified immunity protects the defendants from liability.

Even assuming *arguendo* that Sergeant Smith and Detective Johnson played any role in the alleged seizure outside Alexander's motel room, and that Officer Sutphin seized Alexander unlawfully, because none violated a "clearly established statutory or constitutional right" which a reasonable person would have known, *see Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), they would be entitled to qualified immunity. Specifically, at the time of this incident, there was no clearly established constitutional right for Alexander to be free of a temporary, non-handcuffed detention by investigating officers after he reported that his girlfriend had fallen, been non-responsive for two days, and officers were aware that she was being intubated and had bruising on her face. *See, e.g., City of Tahlequah v. Bond*, 595 U.S. 9 (2021) (per curiam) ("To determine whether an officer's conduct violates clearly established law, a court must first specifically define the right.").

Thus, even if Sergeant Smith and Detective were part of the unidentified group of law enforcement personnel that allegedly surrounded Alexander and/or directed those actions, and even if those actions constituted an unlawful seizure in which Officer Sutphin participated, they would be entitled to

qualified immunity and Alexander's claim would still fail.

    C. The Court should deny Alexander's motion to alter judgment.

Alexander has moved the Court, pursuant to Federal Rule of Civil Procedure 59(e), to reconsider its prior order and judgment filed under Docket Entry 38, wherein the district court dismissed all claims save those advanced against Smith, Johnson, and Sutphin, and denied Alexander's motion for leave to amend his complaint a fourth time. *See* Docket Entry 43.

Rule 59(e) applies to final judgments, *see Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991), but the challenged order and judgment are not final, *see Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993) (reviewing the requirements for a judgment dismissing less than all the claims or parties pursuant to Rule 54(b) to be final).

Nevertheless, Rule 54(b) permits a court to "revise [an interlocutory order] at any time before the entry of a [final] judgment adjudicating all the claims and all the parties' right and liabilities." "Rule 54(b)'s approach involves broader flexibility to revise *interlocutory* orders before final judgment as the litigation develops

and new facts or arguments come to light." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). But this discretion "is not limitless." *Id.* "Reconsideration under Rule 54(b) is appropriate on the following grounds: (1) to account for newly discovered evidence; (2) to account for a change in applicable law; or (3) to correct a clear error causing manifest injustice." *Hill v. Carvana, LLC*, No. 1-22-CV-37, 2022 WL 1604124, at *1 (M.D.N.C. May 17, 2022) (citing *Carlson*, 856 F.3d at 325).

Alexander presents no newly discovered evidence related thereto and identifies no manifest errors of law. He simply does not like the ruling. *See id.* (denying motion for reconsideration where the plaintiff did "little more than disagree with the Court's decision"). His motion should be denied.

    D. The Court grants the defendants' motion to strike Alexander's proposed fifth amended complaint.

Contemporaneous to filing his reply to the defendants' motion to dismiss (almost a month past the deadline to do so),[5] Alexander also filed a proposed fifth amended complaint. *See* Docket Entry 56. The defendants moved to strike it, noting that Alexander has previously filed five iterations of the complaint, sought multiple extensions of time to

---

[5] Even if Alexander had timely filed his reply, it would not affect the outcome of the defendants' motion to dismiss, for all

of the reasons set forth in the discussion of it.

respond without complying with procedural requirements, and did not file a separate motion for leave to amend as required by the Local Rules. *See* Docket Entry 58.

The Court has inherent authority to manage its docket, *see Dietz v. Bouldin*, 579 U.S. 40, 47 (2016), and strike improper filings, *see Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 556 F3d 138, 150 (4th Cir. 2007). Never is that discretion more appropriate here, with a recalcitrant litigant who continues to paper the Court with late, procedurally improper filings. Thus, the Court grants the defendants' motion to strike Alexander's proposed fifth amended complaint.

> E. Good cause does not support Alexander's motion for an extension of time to respond to the motion to strike.

Alexander timely filed a motion for a 14-day extension of the deadline by which to respond to the defendants' motion to strike his proposed fifth amended complaint. Timely motions must still be supported by good cause, though. *See* Fed. R. Civ. P. 6(b)(1)(A). Alexander provides nothing to justify this request. The Court therefore denies it.

## V. CONCLUSION

Finally, there is the issue of whether the Court should dismiss the third amended complaint with or without prejudice. "In the Fourth Circuit, district courts are not required to give plaintiffs one without-prejudice ruling on the merits before dismissing with prejudice." *See United States ex rel. Nicholson v. MedCom Carolinas*, Inc., 42 F.4th 185, 196 (4th Cir. 2022) (citing *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018)). To that end, "[d]istrict courts have inherent power to manage their dockets with an eye toward speedy and efficient resolutions, *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016), and part of that power is the use of with-prejudice dismissals." *See id*.

Here, it is not a close call. Despite Alexander's many "bites at the apple," he has failed to allege a viable Section 1983 claim. He also continues to defy Court rulings regarding the procedure of his filings. *See* Order and Judgment of Chief/Senior Judge Eagles, Docket Entry 38 ("Mr. Alexander certainly has problems complying with the rules governing complaints and stating a claim … Indeed, it appears he is simply not reading the Court's orders or, if he is, that he is not undertaking the effort needed to comply."). Under these circumstances, dismissal with prejudice is appropriate.

**IT IS HEREBY RECOMMENDED** that the Court **GRANT** the defendants' Motion to Dismiss with prejudice, Docket Entry 40, and **DENY** Alexander's motion to alter judgment, Docket Entry 43.

**IT IS HEREBY ORDERED** that the defendants' motion to strike, Docket

Entry 58, is **GRANTED** and that Alexander's motion for an extension of time to file a reply brief to the motion to dismiss and response brief to the motion to strike, Docket Entry 60, is **DENIED**.

_____
JoAnna Gibson McFadden
United States Magistrate Judge

July 27, 2026

14